Subesequent to said arrest a Feseral Grand Jury in Brownsville, Texas returned a two count indictment on March 16, 1999 for alleged violatons of 21 USC § 846 & 841, in count one, the second count was also for violations of 21 USC § 841 (a)(1), (b)(1)(b) and 18 USC,  2.

Thereafter on April 2, 1999 the petitioner appeared before the United States District Court Judge, being the Honerable Hilda G. Tagle thereof entering a plea of guilty to count two and the government agreed to a downward depárture of 1/3 and to drop count one.

Thus on July 23,1999 the petitioner appeared in her Honer's Court and in accordance to the Plea Agreement the petitioner was sentence to 108 months of incarceration, to be followed by four years of supervised release

No post conviction petitions have been filed in the above case and no appeal has been filed, Thus this petition is brought to this court.

THE CAREER OFFENDER PROVISION
WAS IMPROPERLY CALCULATED

As the court is aware the sentencing guidlines have been challenged on every front, from it's constutionality to it's incention and has thus withstood the challenges and has been deemed constitutionaly correct by the Highest Court in the land, since it's establishment on Nov. 1, 1987 as the sentencing reform act, hereinafter S.R.A..

    Thus this petition is not an attempt to challenge it's constitutionly however the petitioner is attempting to challenge the application of said in the above styled case number.

The prtitioner first draws this courts attention to paragraph 19 of the P S.I. Report  which states;

(2)

19. CHAPTER FOUR ENHANEMENTS:

    As is shown in part B (CRIMINAL HISTORY)
below, The defendant has two prior
convictions involing a controlled
substance. Since the instant offense
involves possession with intent to
distribute cocainn and the defendant
was 18 years or older at the time
of the commissission of the crime the
defendant is a career offender within
the meaning of U.S.S.G. §4B1.1 The
offense level determined under U.S.S.G.
4B1.1 is thirty=four rather than the
lower level calculated above.

THE CONVICTION WHICH THE U.S. Probation Officer is refering to is

paragraph which incompasses three count indictment issued out of the

County of Orange  in the State of Florida. So lets assume that the

petitioner as a career offender is correct. We thus have to start from

the statue of conviction, which in this case is 21 U.S.C. § 841 (B)(1)(B),

Therefor in accordance to the statue of conviction this count's maximum

sentence would appear to be forty (40) years, however in order to do this

we would have to exclude every statue including the sentencing guidelines

and as discussed Supra that would not be appropriate.

    Therefor we must first ascribe a class to the felony so that we can

determine the permissable allowed term of supervised release under the

provisions of 18 U.S.C. § 3559. Here we thus find that the felony in

question is that of a class B.

    After finding the class of felony we must then go to Subchapter D

of Chapter 227 which is 18 U.S.C. § 3581, here provision reads as follows:

SENTENCE OF IMPRISONMENT

(a)  in general a defendant who has been found guilty
of an offense may be sentenced to a term of
imprisonment.

(3)

    (b)  authorized terms: The authorized terms of
        imprisonment are;

     (1)  for a class A felony, the doration of the
         defendants, life or any period of time.

     (2)  for a class B felony: not more than
         twenty-five years.

           (three through nine omitted)

Thus assuming that the petitioner did fall under the provisions of 4B1.1 we would then have to place the petitioner in the provisions of a 4B1.1 (C) due to the fact that the maximum under 18 U.S.C. § 3581 (2).

Thus the petitioner would be placed in offense level 32 and not the assumed 34, therefor reducing the petitioner offense level by (2) points

This assertion is further supported by the provisions of 18 U.S.C. § 3621 (a) which states. ( A person who has been sentenced to a term of imprisonment pursuant to the provisions of subchapter D chapter 227 shall be committed to the custody of the Bureau of Prisons. )

This court and the U.S. Attorney will surly agree that chapter 227 of subchapter D was inacted by congress to give the Bureau of Prisons the legal authory to hold one convicted of federal crimes.

However this section only allows the Bureau of Prisons to hold some one legaly when the courts sentences to the provisions of subchapter D of chapter 227 which is not the case at hand. The petitioner was sentenced out side of the provision of 18 U.S.C. § 3581 which is sunchapter D of chapter 227 therefore the petitioner is illegaly confined.

The petitioner thereof request that this court order the P.S.I. Investagator to recalculate said sentence in accordance to the above calculation , producing an offense level of 32 minus 3 points for aceptance of responsibilty . Thereof producing a sentencing range of 151 to 188 months being offense level 29.

(4)

The petitioner also request that her Honer resentences the petitioner that said sentence reflect the same 80 months reduction thus producing a sentence of 75 months, all in accordance to the plea in the above stlyed case.

SECOND ARGUMENT AS TO THE
MISAPPLICATION OF THE
CAREER OFFENDER

The petitioner appeared for sentencing on July 23,1999, and had reviewed the P.S.I. report, the petitioner placed an objection before the above mentioned date. One objections was to petitioner counsel and the other was to the P.S.I. Officer being Lissette T. DeCerda, This objection was based upon the petitioner understanding of 4B1.1, therefore the petitioner send a written objection to the P.S.I. Office.

Thus when the petitioner appeared in her Honers Court, her Honer stated the following (Id, at Transcripts July 23,1999).

(9) THE COURT:     there are no objections

(10) Mr. VILLEGAS:   We've got those cleared up
                     your Honor.

Here the Court was aware that there was some objections to the P.S.I. Report. However counsel said they were cleared up, this asseration by defense counsel belies the facts.

However her Honor still wasn't quite sure so after some brief formalities and being some what confused, the following diealoge took place:  (Id. AT SENTENCING TRANSCRIPT PAGE 4.)

(11) THE COURT: Mr. Villegas, you had indicated there was
                no objections, but are you withdrawing it?

(5)

```
                    Mr. VILLEGAS
            (13)    I'm withdrawing the objections and subsequent
                    addendum. They did address the concerns that
                    we had brought up about the substance abuse,
                    so we are withdrawing that objection.

                    THE COURT
            (17)    All right then.
```

What counsel failed to state to her Honor is that the petitioner

had made seperate objections as to being placed in the provision of 4B1.1

due to the fact that the prior convictions were consolidated, and as said

being the case that they should be treated as one conviction for the

provisions of 4B1.1.

The petitioner now draws this courts attention to the provisions of

4A1.2, Application note 3, which states the following:

```
                    prior sentences are considered related
                    if they resulted from offenses that (
                    one & 2 omitted)  (3) were consolidated
                    for trial or sentencing.
```

The petitioner asserts now as was done in the objection to the P.S.I.

Investagators placement of petitioner in said 4B1.1. Thus the records belie

the placement of petitioner in the provision of a career offender.

The petitioner further supports this assertation by drawing

her Honers attention in paragraph 24 of the P.S.I. report, this report

will show the date of conviction as 10-2-92, in both cases.

The petitioner further asserts that if we look at paragraph 24 & 25

it will show the same county for being, Orange county in the State of

Florida.

The petitioner supports this position by the fact that in case number

CR-91-11845 there was never an adjudication of guilt. (SEE EXHIBET A)

(6)

The following is from case number CR-91-11845 judgement. Page 1

> The Court: and good cause being shown it is
> ordered that Adjucation of Guilt be Withheld

Here the court withheld a finding of guilt, and thus petitioner believes that said case can't be used in the calculation as for the provision of 4B1.1 of the career offender provision.

The U.S. Supreme Court on March 20 2001 decided the case of U.S. V. Buford 149 L Ed 2d 197, in which the issue was the relatedness of prior STATE CONVICTIONS. The court ruled in Bluford Supra that the prior convictions were not related. This determination was based upon the fact that in the Bluford case, there were two prosecuters, one for the Drugs and one for the Robberies. In the cases in question before her Honer there was only one prosecuter & one judge, and with further look at the record the petitioner is sure that there was formal order of concolidation in the State cases.

Thus as the U.S. Attorney in Bluford Supra conceded that Bluford's prior four robberies were related to one another because it involued a series of gastation.

The petitioner asserts that the prior state convictions were part of a common scheme and plan and were consolidated for both trial and sentencing.

The 5th Cir Court of Appeals heard the case of U.S. V. Garcia 962 F 2d 479 and has reviewed the position of consolidation in the form of guilty pleas. In the case before this court the petitioner had one plea agreement, for both offenses (SEE EXHIBIT B).

The petitioner also contents that the convictions in question are for conspiracy to traffic in drugs, and drug trafficing as the courts is aware

(7)

is a conspiracy composed of individules that share a common purpose or objective under one general agreement, or a meeting of the minds with a common goal. This assumption is based on the facts of the petitioners underetanding of the law, and the case of U.S.  V.  Davis 882 F 2d 1334 and U.S.  V.  Lewis 759 F 2d 1316 and U.S.  V,  Baker 859 F 2d 1353.

THE PETITIONER WAS PLACED IN THE
CAREER OFFENDER PROVISION WITH THE
USE OF A UNCONSTITUTIONAL SENTENCE

The petitioner also questions the legality of being placed in the provision of 4B1.1 by the use of prior convictions that were and are uncontitutional convictions. The provisions of U.S.S.G. 4A1.2 Application note 6, is clear and on point as to petitioner assertion of the placement in said provicion.

SENTENCE RESULTING FROM CONVICTIONS THAT (A)
HAVE BEEN REVERSED OF VACATED BECAUSE OF ERRORS
OF LAW OR BECAUSE OF SUBSEQUENTLY DICVORED
EVEDANCE EXONERATING THE DEFENDANT, OR (B) HAVE
BEEN RULED CONSTITUTIONALLY INVALID IN A PRIOR
CASE, ARE NOT TO BE COUBTED.

THE PETITIONER NOW DRAWS THIS COURTS ATTENTION TO EXHIBIT (C̣) this will show the court that the priors were constitutionallt invalid convictions, and thus could not and can't be used in the petitioners classification under 4B1.1.

The following is from the priceedings in the courtroom of the Honorable Anothoney H. Johnson, in the County of Orange being the State of Florida. Present in the court for the State of Florida Mr. So, and for the defendanr Mr. Zouzoulas, which took place on May 25,2001, at 9:57 A.M. (SEE EXHIBIT C).

(8)

This conversations was from the proceedings in the petitioners prior state convictions, being case numbers CR-91-11845 and CR-92-9334, thus due to the facts that said cases were consolidated they must be helded on the same day at the same time.

Back on point the State Attorney agrees that the convictions in the affordmentioned cases were constitutionaly invaled convictions, and thus this court has the legal obligation to vacate the petitioners sentence, and resentence the petitioner with out the provisions of 4B1.1 of the U.S.S.G..

This resentencing would produce a criminal history catgory of 3 and and offense level of 26, minus 3 points for acceptence of responsibility creating a 23 for base offense level. Therefor producing a sentencing rabge of 51 to 63 months, thus also giving the petitioner the 1/3 reduction as stated in the plea agreement due to 5K1.1 U.S.S.G. therefore giving petitioner a sentencing cap of 39 months.

The petitioner must point out that U.S.S.G. 4A1.1 application note states 6 will aid her honor in the search for truth and justice in the case before her Honor.

The petitioner also request that her Honer take into consideration the petitioner medical condition. Which is coronary artery disease. On 5-19=2000 it was discovered that petitioner suffered a hearth attack, thereafter in the 9 month of 2001 it was discovered that petitioner had some artery blockage, therefore the petitioner under went angeo , two arterys were open anf one was stented, thereafter on 3-28-2002 the petitioner suffered another heart ATTACK CAUSING THE LOST OF 80% of the hearts function. on 6-4-2002 the prtitioner underwent tripple by-pass surgery

(9)

The petitioner thus discovered that he has more blockage then was assumed and therefore will have to go back into surgery. This with being a insulin dependant diabetic for over 48 years, the petitioner life expectancy is very short,    ¯(SEE EXHIBIT D)

The case U.S. V. Tocco 135 F 3d 166 would give her Honor the authory to take into account the petitioner life expectancy Id 135 F. 3d 116 (32) thus this court should take into account every aspect of the case when resentencing the petitioner which truly has to be this case, or a manfested miscarriage of justice will asure to the petitioner.

The petitioner is now asserting that he is waiving his right to be at a resentencing hearing in the above number case.


Respectfully Submitted

Louis Marvin Szorcsik 07359-018
Federal Correctional Complex
Coleman Low A-1
P.O. Box 1031
Coleman, FLorida 33521-1031

(10)

EXHIBIT  (A)

_____ Probation Violator

_____ Community Control Violator

_____ Retrial

_____ Resentence

**State of Florida**

v.

~~Robert Szorcsik~~
**Defendant**

In the C____ it Court, __Ninth__ Judicial Circuit

in and for ____Orange____ County, Florida

Division __14__

Case Number __CR91-11845__

FILED IN OPEN COURT

THIS __11__ DAY OF __Sept__ 19 __92__

Fran Carlton, Clerk

---

## J U D G M E N T

The defendant, __Robert Szorcsik__, being personally before this court

represented by __M Bleckman__, the attorney of record, and the state

represented by __M Heller__, and having

_____ been tried and found guilty by jury/ by court of the following crime(s)

_____ entered a plea of guilty to the following crime(s)

**X** entered a plea of nolo contendere to the following crime(s)

4217864 ORANGE CO. FL.
09/18/92   11:35:12am
OR4462 PG3140

| Count | Crime | Offense Statute Number(s) | Degree of Crime | OBTS Number |
|-------|-------|---------------------------|-----------------|-------------|
| 3) | Traffic in Cocaine (dealr) | 893.13 | F2 | 4370051 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

_____ and no cause being shown why the defendant should not be adjudicated guilty, IT IS ORDERED that the defendant is hereby ADJUDICATED GUILTY of the above crime(s).

_____ and pursuant to section 943.325, Florida Statutes, having been convicted of attempts or offenses relating to sexual battery (ch.794) or lewd and lascivious conduct (ch.800) the defendant shall be required to submit blood specimens.

**X** and good cause being shown; IT IS ORDERED THAT ADJUDICATION OF GUILT BE WITHHELD.

32-34 (8/92)

Defendant _____    Case Number _____

**Other Provisions, continued:**

| | |
|---|---|
| Consecutive/Concurrent<br>As To Other Counts | _____ It is further ordered that the sentence imposed for this count shall run<br>(check one) _____ consecutive to _____ concurrent<br>with the sentence set forth in count _____ of this case. |
| Consecutive/Concurrent<br>As To Other Convictions | _____ It is further ordered that the composite term of all sentences imposed for<br>the counts specified in this order shall run<br>(check one) _____ consecutive to _____ concurrent<br>with the following:<br>(check one) |

_____ any active sentence being served.

_____ specific sentences: _____

_____

_____

_____

In the event the above sentence is to the Department of Corrections, the Sheriff of __ORANGE__ County, Florida, is hereby ordered and directed to deliver the defendant to the Department of Corrections at the facility designated by the department together with a copy of this judgment and sentence and any other documents specified by Florida Statute.

The defendant in open court was advised of the right to appeal from this sentence by filing notice of appeal within 30 days from this date with the clerk of this court and the defendant's right to the assistance of counsel in taking the appeal at the expense of the State on showing of indigency.

In imposing the above sentence, the court further recommends _____

_____

_____

_____

DONE AND ORDERED in open court at_____ __ORANGE__ County, Florida, this_____ day of _____ 19___

_____
Judge

STATE OF FLORIDA
I HEREBY CERTIFY that the above and foregoing is a true copy of the original filed in this office
LINDA W. _____ Clerk Circuit Court
_____ D.C.
Dated __3-9-98__

EXHIBIT  (B)

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT IN AND
FOR ORANGE COUNTY, FLORIDA

CASE NUMBER:  CR92-9334

STATE OF FLORIDA,

      Plaintiff,

vs.

ROBERT SZORCSIK,

      Defendant.

FILED IN OPEN COURT
THIS 2 DAY OF OCT . 1992
Fran Carlton, Clerk
BY _____ D.C.

## PLEA

1.   I, **ROBERT SZORCSIK**, defendant herein, withdraw my plea of NOT GUILTY, and enters a plea of ~~one of 2~~

( ) Guilty (**XX**) Nolo Contendere to ~~CONSPIRACY TO~~ TRAFFICK IN A CONTROLLED SUBSTANCE

( ) Guilty ( ) Nolo Contendere to _____

( ) Guilty ( ) Nolo Contendere to _____

2.   I understand that if the Court accepts the Plea, I give up my right to a trial, at which I would have had the following rights:  (1) to have a ~~jury determine whether~~ I am ~~guilty or not guilty~~, or a hearing before a Judge if charged with a violation of probation; (2) to see and hear the witnesses testify, and to have my lawyer question them for me; (3) to subpoena and present witnesses and items of evidence in my defense, and to present any defense I might have to a jury; (4) to testify or to remain silent; and (5) to require the prosecutor to prove my guilty by admissible evidence beyond any reasonable doubt, or to the satisfaction of the Court's conscience if charged with violation of probation, before I can be found guilty.  I further understand that I give up my right to appeal all matters except the legality of my sentence or this Court's authority to hear this case.  My lawyer  has explained to me what an appeal is.

3.   I understand that a Plea of Not Guilty denies that I committed the crime(s); a plea of guilty admits that I did commit the crime(s); a plea of nolo contendere (or "No Contest") said that I do not contest the evidence against me.  I understand that if the Court accepts my plea(s) there will be no trial and the Court will impose sentence(s) based upon my plea(s).

4.    I have read the Information/Indictment/Warrant in this case and I understand the charge(s) to which I enter my plea(s).    My lawyer has explained to me the maximum penalty for the charge(s), and I understand these things.    I understand that if I am on parole, my parole can be revoked and I can be returned to prison to complete that sentence; if I am on probation, my probation can be revoked and I can receive a separate sentence up to the maximum on the probation charge in addition to the sentence imposed on this case.

5.    No one has promised me anything to get me to enter the plea(s), except:

a.  (     )    No exception.  *CONSECUTIVE*  *with mvt.*
b.  ( **XX** )    The Prosecutor has agreed: **3 YEAR MINI-MUM MANDATORY INCARCERATION TO RUN CONCURRENT WITH ORANGE COUNTY CIRCUIT COURT CASE NUMBER CR91-11845 FOR A TOTAL SENTENCE IN THE TWO CASES OF 8 YEARS, DOC** *+ COSTS OF INVESTIGATION*
c.  (     )    The Court has agreed:_____

6.    No one has pressured or forced me to enter the plea(s).    I am entering the plea(s) because:

a.  (     )    I believe that I am guilty
b.  ( **XX** )    I believe it is in my own best interest

I enter the plea(s) voluntarily and of my own free will.

7.    I give up my right to have the prosecutor recite to the judge the facts showing my guilt (factual basis) before he accepts my plea(s).

8.    I understand my sentence will be imposed upon the Sentencing Guidelines.    A presumptive sentence will be determined based upon certain factors.    The Court can exceed this presumptive sentence and impose up to the maximum of **THIRTY (30) YEARS INCARCERATION AND A $50,000.00 FINE** by stating clear and convincing reasons.    If the Sentencing Guideline range is exceeded I will have the right to appeal my sentence.

9.    I understand and agree that if the judge permits me to remain at liberty pending sentencing, I must notify my lawyer and bondsman or Pre-Trial Release officer of any change of my address or telephone number, and if the judge orders a Pre-Sentence Investigation (PSI) and I willfully fail to appear for an appointment with the probation officer for the PSI interview, the judge can revoke my release and place me in jail until the PSI interview has been completed or until my sentencing.

10.  My education consists of the following: _____
_____*COLLEGE*_____

I am not under the influence of any drug, medication or alcohol at the time I sign this plea.  I am not suffering from any mental problems at this time which affect my understanding of this plea.

11.  I have read every word in this written plea.  I have discussed this written plea with my lawyer and I fully understand it.  I am fully satisfied with the way my lawyer has handled this case for me.

SWORN TO, SIGNED AND FILED in Open Court in the presence of Defense Counsel and Judge this ___2___ day of October, 1992.

**FRAN CARLTON**, Clerk of the
Circuit and County Courts

By: _____
Deputy Clerk in Attendance

_____
**ROBERT SZORCSIK**, Defendant
Incarcerated

Telephone No.:  NONE

### CERTIFICATE OF DEFENDANT'S ATTORNEY

I, **MARK S. BLECHMAN**, Esquire, Defendant's Counsel of Record, certify that:  I have discussed this case with the Defendant, including the nature of the charge(s), essential elements of each, the evidence against him/her of which I am aware, the possible defenses he/she has, the maximum penalty for the charge(s) and his/her right to appeal.  No promises have been made tot he defendant other than as set forth in this plea or on the record, I believe he/she fully understands this written plea, the consequences of entering it, and that defendant does so of his/her own free will.

_____
**MARK S. BLECHMAN**, Esquire
Attorney for Defendant
Florida Bar 338680

### CERTIFICATE OF PROSECUTOR

(   )  I hereby consent to the entry of the plea to the lesser charge(s)
( X )  I confirm that the promises set forth in paragraph 5(b) have been made

_____
Assistant State Attorney

EXHIBIT (C)



1

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA
CRIMINAL JUSTICE DIVISION

2

3

DIVISION NUMBER: 14

4

5   STATE OF FLORIDA,

6          Plaintiff,                    CASE NUMBERS: CR92-9334
    vs.                                               CR91-11845

7

    ROBERT SZORCSIK,

8          Defendant.

9   _____/

10

11

12            MOTION TO VACATE JUDGMENT AND SENTENCE

              BEFORE

13            THE HONORABLE  ANTHONY H. JOHNSON

14

15

                                   Recorded by Automated Court Reporters
16                                 In the Orange County Courthouse
                                   425 North Orange Avenue
17                                 Courtroom 9A
                                   Orlando, Florida 32801
18                                 Commencing at 9:57 a.m.
                                   Friday, may 25, 2001
19                                 Transcribed by Mildred V. Swaby-Rose

20

21

22   APPEARANCES:

23   ALEXANDER ZOUZOULAS              MIN SO
     Attorney at Law                 Assistant State Attorney
24   219 E. Livingston Street        415 North Orange Avenue
     Orlando, Florida 32801          Orlando, Florida 32801
25   On behalf of the Defendant.     On behalf of the Plaintiff.

1    THE COURT: ...and pursuant to the Rules of Criminal Procedure, the

2    Court always has -- okay...

3    MR. ZOUZOULAS: Yes, Your Honor.

4    THE COURT: Just want to make sure I understood kind of how we got to

5    be where we are.

6    What -- where is he now? Is he...

7    MR. ZOUZOULAS: He's in federal prison right now.

8    THE COURT: Okay. Which gives rise to another issue, but without

9    getting there, Mr. So, do you oppose the Defense Motion?

10    MR. SO: Yes.

11    THE COURT: And if you want, what I can do is, I need to take a break

12    anyway and let the Clerks kind of catch up and things settle out.

13    If you want to take a look through the court file, if you -- after you've done

14    that, if -- or have you had a chance to look through the court file?

15    MR. SO: I have reviewed our case management about the sentence, Your

16    Honor, so I am ready. The only thing is, the defendant is not here. I think he was

17    illegally sentenced; he has to be re-sentenced. But since he's not here, I don't

18    think we could really go forward anyway, Your Honor.

19    MR. ZOUZOULAS: We can -- we can proceed on the merits of the

20    Motion if the Court decides to, well, grant the relief. I believe the question

21    supports vacating the judgment and sentence. there would be no re-sentencing.

22    As a practical matter, the Court would vacate the judgment and sentence in both

23    cases.

24    THE COURT: In other words, you're suggesting that I set aside this 1991

25    and 1992 conviction?

EXHIBIT  (D)

**FEDERAL MEDICAL CENTER**
**ROCHESTER, MINNESOTA**
**INITIAL ASSESSMENT**

9/3 M/S

02 MAY 13 PM 2:06

NAME: SZORCSIK, LOUIS
REG. NO.: 07359-018
DOB: MARCH 1, 1945
DATE OF ADMISSION: MAY 3, 2002
DATE: MAY 9, 2002

SUBJECTIVE:

REASON FOR ADMISSION: Coronary artery disease.

ADMISSION HISTORY: Mr. Szorcsik is a 57 year old man transferred from FCC Coleman, Florida, to the Federal Medical Center (FMC) Rochester, Minnesota, for further care of his coronary artery disease. His medical problem list includes the following:

1) Coronary artery disease. The patient underwent coronary angiography and stenting on October 8, 2001. At that point, he had an ejection fraction of 60% and had PTCA and stenting of a proximal left anterior descending artery lesion, as well as PTCA of a mid-left anterior descending artery lesion. In the next several months, he was back at FCC Coleman, Florida. In April 2002, he developed signs and symptoms of congestive heart failure and was re-hospitalized on April 11, 2002, at Leesburg Regional Medical Center in Leesburg, Florida. He underwent repeat cardiac evaluation and an echocardiogram showed an ejection fraction of about 30%, as well as diastolic dysfunction. Nuclear medicine stress test showed moderate inferior infarct, moderate anterior infarct with minimal ischemia and moderate septal ischemia. Angiography was again performed on April 15, 2002, which showed 99% restenosis of the proximal left anterior descending stented segment. Thee was 80% stenosis of the mid to distal LAD with diffuse and 80% narrowing in the distal segment. Further coronary disease was seen in the second small diagonal branch, a dominant circumflex coronary artery, and a ramus coronary artery. Non-dominant small right coronary artery had 80% stenosis. Ejection fraction was thought to be 20-25% by angiography and a viability study was performed which demonstrated significant viability with improved profusion involving the apex, septum, and most of the anterior and inferior wall of the left ventricle. This was thought to be suggestive of highly viable myocardial tissue, and in view of his recent stenting and now restenosis as well as severe disease and left ventricular dysfunction, the patient was thought to be a good candidate for surgical coronary artery bypass grafting. Percutaneous revascularization was felt not feasible due to his diffuse disease and distal disease. He was managed medically and correctional and health service staff from FCC Coleman arranged to have the patient transferred to FMC Rochester for further evaluation and care.

SZORCSIK, LOUIS
REG. NO.: 07359-018
DOB: MARCH 1, 1945
FMC ROCHESTER, MN
PAGE 2

2)  Congestive heart failure. This is thought to be on the basis of ischemic cardiomyopathy.

3)  Diabetes mellitus. The patient states that this developed when he was a child and that he has been on Insulin since about age eight.

4)  Diabetic retinopathy. He has been treated with laser treatment to the eyes in the past several years.

5)  Diabetic neuropathy. He has decreased sensory function in his toes.

6)  History of GI bleeding. The patient was hospitalized in 1988 with hemorrhagic gastritis. Per the chart, he has had positive H-pylori serology.

7)  Hypertension.

8)  Status post cholecystectomy.

9)  History of positive PPD. He was treated for several days with INH in October 1999 which apparently caused elevated AST and ALT. This was stopped and he was apparently treated with Rifampin from November 19, 1999, to May 12, 2000.

10) History of dupuytren's contracture of his left forth finger.

11) Reconstruction of his right fourth finger in surgery in 1969.

Currently, the patient has no specific complaints other than exertional dyspnea. He can walk around on the unit, but find himself becoming short of breath if he walks for more than about 20-30 yards. He moves around in a wheelchair without significant difficulty and does wear oxygen at night in bed. He has had no chest pain, nausea, vomiting, abdominal pain, coughing, fever, chills, rigors, headache, visual changes, or other symptoms. He states his weight has increased about three to five pounds in the past few days.

ALLERGIES: No known drug allergies.

CURRENT MEDICATIONS: Lasix, 40 mg, po q a.m.; Potassium Chloride, 10 mEq, po q day; Nitroglycerin, 0.4 mg, sublingually, tablet, use as directed and keep at bedside; Metoprolol, 12.5 mg, po q day (this was changed from Toprol XL); Losartan, 50 mg, po bid; Enteric coated aspirin, 325 mg, po q day; Flovent, 220 mcg, two puffs bid; Albuterol Nebulizer qid prn; NPH Insulin, 30 units sub-q q a.m., 15 units sub-q q p.m.; Regular Insulin, 8 units sub-q q a.m., and sliding scale coverage at other times; Imdur, 30 mg, po q day; Simvastatin, 80 mg, po q day; Folic Acid, 1 mg, po q day.

SOCIAL HISTORY: The patient states he was originally born in Kentucky and lived in Florida. He has four children who live around Florida. He is divorced and his second wife lives in Kentucky. He denies being a cigarette smoker.

COPY

SZORCSIK, LOUIS
REG. NO.: 07359-018
DOB: MARCH 1, 1945
FMC ROCHESTER, MN
PAGE 3

**OBJECTIVE:** Vital signs: Weight on May 5, 202 pounds; current weight 205 pounds; temperature 98.0°; pulse 69; respirations 16; blood pressure 102/43; pulse oximetry was 96% yesterday; chem sticks have been in the 67-252 range in the past few days. The patient appears comfortable sitting up in bed. Speech is clear and coherent and he has a normal affect and normal level of consciousness. Pupils: Equal, round, and reactive to light. Oropharynx clear with no erythema. Dentures are in place. Neck: No lymphadenopathy, bruits, JVD, or thyroid nodule. Lungs: Crackles bilaterally in the lower 1/3 of each lung base. Heart: Regular rate and rhythm with a soft S4, but no S3 or murmurs. Abdomen: Soft, non-tender, and non-distended with normal bowel sounds. No hepatosplenomegaly is palpable. Lower extremities: 1+ edema bilaterally. He does have hair loss and slightly shinny skin to both legs. Toes have onychomycosis, but there is no diabetic foot ulcers or any open wounds on his feet. Faint dorsalis pedis pulses bilaterally. Neurologic: Sensory exam normal except in distal toe tips which have decreased sensory function. Strength: 5/5 in upper and lower extremities bilaterally. Gait: Normal with no ataxia or weakness. Laboratory: EKG performed May 3 shows sinus tachycardia with left bundle branch block and a regular rhythm of about 106 beats per minute. May 6, glucose 187; BUN 30; creatinine 1.0; albumin 3.4; AST 29; ALT 35; bilirubin 0.5; potassium 4.9; sodium 143; white blood cell count 8,400; hematocrit 34.5%; platelet count 300,000; RPR hepatitis B surface antigen and hepatitis C antibody are non-reactive.

**ASSESSMENT:** 57 year old man with type I diabetes and severe coronary artery disease by recent coronary angiograms. Currently, he has some symptoms and signs of congestive heart failure and volume overload, but is otherwise symptomatically stable. He needs cardiology evaluation and consideration of cardiovascular re-vascularization.

**PLAN:**

1) Coronary artery disease. Continue medical management with aspirin, beta-blocker, and Simvastatin. He is on Losartan as well. Cardiology consultation was submitted by P.A. Sullivan on May 7, 2002. Cardiac angiogram films are apparently in our x-ray department and available for cardiologist to review at that point.

2) Diabetes. Continue Insulin and 2,000 calorie ADA diet with sodium restriction. Continue bid chem sticks.

3) Ophthalmologic. Optometry consult will be submitted.

4) History of positive PPD. He apparently received about six months of Rifampin as TB prophylaxis in 1999 and early 2000. He does not have signs or symptoms of active tuberculosis at present and chest x-ray performed May 7, 2002, did not show changes of pneumonia or tuberculosis.

5) Pulmonary. He is currently on Flovent and his albuterol nebulizer available. Pulmonary function test performed April 12, 2002, to evaluate dyspnea did not show

SZORCSIK, LOUIS
REG. NO.: 07359-018
DOB: MARCH 1, 1945
FMC ROCHESTER, MN
PAGE 4

any obstructive lung disease. He had moderate restive pattern with a moderate decrease in DLCO which was consistent with congestive heart failure. As he has never been a cigarette smoker, I do not believe at present he has asthma or COPD. Flovent stopped. The patient received Pneumovax in 1999 and influenza vaccine most recently in October 2001. He should continue to get periodic influenza vaccines.

_____          5/10/02
David R. McNamara, M.D.                     Date

dd: 05-10-2002
dt: 05-10-2002/as



# FEDERAL MEDICAL CENTER
## ROCHESTER, MINNESOTA
### DISCHARGE SUMMARY

**NAME: SZORCSIK, LOUIS**
**REG. NO.: 07359-018**
**DOB: MARCH 1, 1945**
**DATE OF ADMISSION: MAY 3, 2002**
**DATE OF DISCHARGE: JULY 1, 2002**
**DATE: JULY 1, 2002**

**PRINCIPAL DIAGNOSIS:**

1)      Coronary artery disease.

**ADDITIONAL DIAGNOSES:**

1)      Congestive heart failure secondary to ischemic cardiomyopathy;
2)      Type I diabetes mellitus;
3)      Diabetic retinopathy;
4)      Diabetic neuropathy;
5)      History of hemorrhagic gastritis, 1988;
6)      Hypertension;
7)      History of a positive PPD, treated with rifampin in 1999 and 2000.

**OPERATIVE PROCEDURES:**

1)      Three vessel coronary artery bypass on June 5, 2002, at St. Marys Hospital in Rochester, Minnesota.

**HISTORY OF PRESENT ILLNESS:**      Mr. Szorcsik is a 57 year old man, who was sent from FCC Coleman, Florida, to Federal Medical Center (FMC) Rochester, Minnesota, on May 3, 2002, for further care of coronary artery disease. He had been in an outside hospital in Leesburg, Florida, in April 2002.

**SIGNIFICANT LABORATORY:**  May 6, RPR, hepatitis B surface antigen, hepatitis C antibody, all nonreactive. May 13, TSH: 3.4; hemoglobin A1C: 8.5%; cholesterol: 122; triglycerides: 79; HDL cholesterol: 39; LDL cholesterol: 68. May 17, urinalysis: normal. June 26, creatinine: 1.1; glucose: 64; AST: 20; ALT: 25; potassium: 5.0; WBC count: 6,300; hematocrit: 30.3%; platelet count: 320,000.

**HOSPITAL COURSE:**      Mr. Szorcsik was admitted May 3, 2002. Cardiology consultation was submitted by P.A. Sullivan on May 9. I assumed care of this patient on May 9, 2002, when I returned to FMC Rochester. Mr. Szorcsik was seen in consultation by Cardiologist, Dr. Bardsley, on May 17, 2002. He reviewed Florida angiogram with cardiac surgeon and patient was admitted

COPY



**WEST GROUP ORDER FORM FOR *WESTPACK* PRODUCTS – LAW FIRM**
610 Opperman Drive, P.O. Box 64833
St. Paul, MN, 55164-1803
Tel: 651/687-8000

**THOMSON**

**WEST**

Account # _____ PO# _____ Date March 3, 20 03
Name/Subscriber Villegas Law Firm
Address 1324 E 7th Ave Telephone # (990) 544-3352
City Brownsville State TX Zip 78520
Order Contact Mr Villegas Billing Contact _____
Billing Address (if different) _____ City _____ State _____ Zip _____
Submitting Rep Name and Number S Miesur 0004639

Westlaw Password Contact: Albert Villegas E-mail (for password delivery) albertvillegas@EV1.net

| Svc Mtrl # | WestlawPRO Products | Total # of Passwords | Mo Banded/ Base Rate | Per User Rate | Promo/ Other | Total Monthly WestlawPRO Charges |
|---|---|---|---|---|---|---|
| | TX Gold | 2 | 359°° | 25°° | | 264°° |
| | 2840 Westpak Discount (5%, 12 months) | | | | | |

Notes (including KeyCodes): G1

Promotion Codes: National – F1, F2, F3; State – G1, G2, G3; Topical – T1, T2, T3   Total Monthly WestlawPRO Charges $ 264 °°

| Svc Mtrl# | Promotion Code | Print Products | Charges |
|---|---|---|---|
| 40691814 | G1 | Johansons TX Probate Code (50% off Westpak) Discount | 50°° |

Total Charges $ 50 °°

Terms : $ _____ plus tax, per month for approximately _____ months, beginning the month following any applicable incentive. For terms of
12 or 24 months, without interest on principal while installments are paid as agreed.

| Svc Mtrl# | Promotion Code | Print Products |
|---|---|---|
| | | |
| | | |
| | | |

Monthly WestlawPRO Charges are billed on the date West processes Subscriber's order and continue for a minimum of 12 months. If Subscriber, by his/her initials, elects to commit to a longer term, the Monthly WestlawPRO Charges will be billed as set forth below. Thereafter, Monthly WestlawPRO Charges are billed at then-current rates. Subscriber also agrees to maintain all subscriptions to the WestPack Print Products (New and/or Existing) for a minimum of 12 months or for the term of the WestPack WestlawPRO Products, whichever is longer. The then-current charges for Subscriber's WestPack Print Products (both initial charges and subscription services charges) shall be discounted 50% for as long as Subscriber maintains all subscriptions to the WestPack Products elected herein. Thereafter, such charges shall be billed at then-current rates.

_____ Subscriber's Initials for 24 Month Agreement Notwithstanding anything in the "Subscriber Agreement" (as defined herein), Subscriber agrees to commit to a total of 24 months and the Monthly WestlawPRO Charges for the second 12 month period shall be up to 6% more than the Monthly WestlawPRO Charges for the initial 12 months.

_____ Subscriber's Initials for 36 Month Agreement Notwithstanding anything contained in the "Subscriber Agreement", Subscriber agrees to commit to a total of 36 months and the Monthly WestlawPRO Charges for the third 12 month period shall be up to 6% more than the Monthly WestlawPRO Charges for the second 12 months.

_____ Subscriber's Initials 2 _____ attorneys are employed by Subscriber at the location identified above

| Svc Mkt # | WestlawPRO Products | Total # of Passwords | Mo Banded/ Base Rate | Per User Rate | KeyCode/ Promo | Total Monthly WestlawPRO Charges |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

Notes:

Total Monthly Charges $

Monthly WestlawPRO Charges, for the WestlawPRO products elected above, are billed on the date West processes Subscriber's order and continue for a minimum of 12 months. If Subscriber, by his/her initials below, elects to commit to a longer term, the Monthly WestlawPRO Charges will be billed at the rates set forth below. Thereafter, Monthly WestlawPRO Charges are billed at then-current rates.

_____ Subscriber's initials for 24 Month Agreement  Notwithstanding anything in the Subscriber Agreement (as defined herein), Subscriber agrees to commit to a total of 24 months and the Monthly WestlawPRO Charges for the second 12 month period shall be up to 6% more than the Monthly WestlawPRO Charges for the initial 12 months.

_____ Subscriber's initials for 36 Month Agreement  Notwithstanding anything contained in the Subscriber Agreement, Subscriber agrees to commit to a total of 36 months and the Monthly WestlawPRO Charges for the third 12 month period shall be up to 6% more than the Monthly WestlawPRO Charges for the second 12 months.

Issue Westlaw Passwords to:

| NAME (last, first, middle initial) | Atty | Lib | Para | Other | Product(s) |
|---|---|---|---|---|---|
| Albert Villegas | X | | | | |
| Hector Villegas | X | | | | |
| | | | | | |
| | | | | | |

QuickView+  __X__
Authorized QuickView+ Password Holder _____  Password _____  Authorized Acct. # _____

Subscriber shall authorize which Westlaw password(s) shall have access to QuickView+. Actual charges billed by West may vary from charges reported on QuickView+. Subscriber shall pay charges as billed. West does not warrant and has no liability with respect to the accuracy of charges or other information on QuickView+

1. **Subscription Service.** Subscription service is provided at the then-current prices and may consist of a) Print Products: pocket parts; pamphlets; recompiled, continuation, replacement or auxiliary volumes; additional volumes; looseleaf pages and/or supplements and volumes of a new series or edition; and b) Westlaw Software: new versions.

2. **General Provisions.** This Order Form is subject to approval by West in St. Paul, Minnesota, and will be governed by the laws of the state of Minnesota. The state and federal courts sitting in Minnesota will have jurisdiction over any claim and the parties consent to the jurisdiction of such courts. Subscription service for print products is provided at the then-current prices and may consist of pocket parts; pamphlets; recompiled, continuation, replacement or auxiliary volumes; additional volumes; looseleaf pages and/or supplements and volumes of a new series or edition. Sales, use, personal property, value added tax (VAT) or equivalent, ad valorem and other taxes are the responsibility of the Subscriber. Subscriber may be charged interest for overdue installments and subscriptions and for other open account charges. Interest charged may be adjusted to the then-highest current rate allowable on Minnesota contracts. Transfer or assignment of rights or obligations by Subscriber constitutes a material breach of this Order Form, the Subscriber Agreement and/or the West Software License Agreement. If any installments, subscriptions or open account charges remain unpaid 90 days after maturity, all unmatured installments become due and payable at the option of West. All collection fees, including but not limited to attorneys fees, are payable by Subscriber. Transportation and handling charges will be added for print products. West may make credit investigations it deems appropriate including the request of a consumer credit report from a credit reporting agency on any individual identified in this Order Form. If Subscriber inquires whether a credit report was requested, West will provide information of such and if a report was received, West will provide to Subscriber the name, address and telephone number of the agency that supplied the report.

3. **Returns.** If you are not completely satisfied with any product you purchase or license from West, you may return it within 45 days of the invoice date for a full refund or credit. Westlaw Charges are not refundable.

The Subscriber Agreement for Westlaw and CD-ROM Libraries, the applicable Schedule A price plan ("Subscriber Agreement") are hereby incorporated by reference and made part of this Order Form. Subscriber, by his/her signature below, acknowledges his/her understanding and acceptance of the terms and conditions of the Subscriber Agreement.

Signature X _____   Date _____

**AUTHORIZED REPRESENTATIVE FOR ORDER FORM**

Printed Name _____
Date _____
Signature X _____

If Subscriber is incorporated or a limited liability entity, the following must be completed by an owner/principal personally: I agree to these terms and personally guarantee payment of this agreement and subscription service furnished thereunder.

Signature X _____

For Credit Card Transactions only:

Visa ____  Master Card ____  American Express ____  Card# _____  Exp. Date _____

2/1/03

00000000 271.doc

PAYMENT IN FULL OF $ 348⁰⁰ ATTACHED

TEL 956-687-5162  FAX 956-687-5294
Cell 867-7037

**WEST GROUP**

# Fax



| **To:** | Albert Villegas | **From:** | STAN MIESNER |
|---|---|---|---|
| **Fax:** | | **Pages:** | PLUS 2 |
| **Phone:** | | **Date:** | March 3, 2003 |
| **Re:** | Westlaw | **CC:** | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

Dear Albert,

Please see the attached Westlaw and Bridge Agreement. You'll notice I include a book on this order. Prices have gone up a little since we last met, but by placing the book on the order I was actually able to get you a better price or at least keep it the same.

Also, I'm able to give you 30 days at no charge. The 60 day offer expired in January.

I'll be in Brownsville this Wednesday and can come by and pick up the signed contract along with the check.

The contract should be initialed on page 1 where I've indicated, signed in both places on page 2. The bridge agreement also must be signed and please initial where I've changed the 60 days to 30.

Give me a call if you have questions. I understand you're in trial, so if you need to call me after hours, that's no problem. My cell is 867-7037.

Cordially

Stan Miesner

# Westlaw.

## WESTLAWPRO BRIDGE AMENDMENT

### AVAILABLE ONLY TO NEW WESTLAW SUBSCRIBERS

Amendment to Subscriber Agreement for Westlaw and CD-ROM Libraries between _Albert Villegas_ ("Subscriber") and WEST GROUP ("West") as follows:

1. **Effect of Amendment.** The underlying Subscriber Agreement for Westlaw and CD-ROM Libraries, of even date herewith including all Schedules and Order Forms thereto ("Subscriber Agreement"), between Subscriber and West is amended as specifically set forth herein to incorporate the terms of this Amendment. As amended, the Subscriber Agreement shall remain in full force and effect according to its terms and conditions. All terms used in this Amendment shall have the meanings attributed to them in the Subscriber Agreement. This Amendment embodies the entire understanding between the parties with respect to the subject matter of this Amendment and supersedes any and all prior understandings and agreements, oral or written, relating to the subject matter.

2. **Term and Termination.** The Subscriber Agreement and this Amendment shall become effective upon approval and acceptance by West in St. Paul, Minnesota and shall continue in force and effect as set forth in 3.1 and 3.2 herein.

3. **WestlawPRO Products**

   3.1 From the effective date of this Amendment and continuing for a minimum of ~~180~~ 30 days thereafter ("Period 1"), at no charge, access to the WestlawPRO databases elected by Subscriber on the Order Form. Access to and use of all other Westlaw databases, Features and services shall be billed to Subscriber at then-current Schedule A Plan 1 WestlawPRO rates.

   3.2 From the end of Period 1 and continuing _12_ months thereafter ("Period 2"), Subscriber shall receive access to the WestlawPRO elected by Subscriber on the Order Form, at the rates set forth therein. All access to and use of all other Westlaw databases, Features and services will be billed at the then-current Schedule A Plan 1 WestlawPRO rates and/or Schedule A Plan 1 WestlawPRO rates.

   3.3 All other terms and conditions of the Subscriber Agreement shall remain unchanged.

**WEST GROUP**

By: _____

Title: _____

Date: _____

**SUBSCRIBER**

By: _____

Name (please print): _Albert Villegas_

Title: _____

Date: _____

Subscriber's Address: _1324 E 7th Ave_
_Brownsville TX_
_78520_

→ OFFER EXPIRES on Jan 27, 03

8/1/02

000000000  267.dot

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

LOUIS MARVIN SZORCSIK            )
  PETITIONER              )
           )
Vs.                              )
           )
UNITED STATES OF AMERICA         )
  RESPONDENT              )
           )

**B-03-088.**

CR-CASE NO. B-99-00112-01

JUDGE HILDA G. TAGLE

United States District Court
Southern District of Texas
FILED

MAY 0 8 2003

Michael N. Milby
Clerk of Court

MOTION FOR MODIFICATION
OF SENTENCE

  Comes now, Louis Marvin Szorcsik, Hereinafter petitioner Pro-Se and will move this court to modify the sentence imposed in the above case number for the forth coming reasons, thus seeking redress in its proper form.

  The petitioner thus moves this motion under the provisions of 18 USC § 3582, and or the provisions of 28 USC §2255. Thus moving under the eyes of Hains V. Kerner 404 U.S. 519, Therefore the petitioner request that if this motion as brought to this court is under a improper statue for the relief requested, the petitioner states that due to Hains Supra, This court has the jursidiction to change the face of the motion to one which will be proper statue for the relief requested, Thus giving this court subject matter jursidiction and allowing the petitioner the redress as will be just and proper.

STATEMENT OF THE CASE

  On or about Feb. 25, 1999 the petitioner was arrested in the state of Texas, at the Harlingen International Airport, with approximatly 1,154 grams of cocain and $1,519.00 dollars in U.S. Currency.

(1)